UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MOBILE WORKFORCE INC., a Delaware corporation,

        Plaintiff,

v.

PACIFIC MEDICAL, INC. a California Corporation

        Defendant.

Case No. C05-5229 KLS

FINDINGS OF FACT AND CONCLUSIONS OF LAW

    This matter was tried to the Court without a jury on October 25, 26, 27 and 30, 2006. Plaintiff Mobile Workforce, Inc. appeared at the trial through its attorney of record, Rob J. Crichton of Keller Rohrback L.L.P. Defendant Pacific Medical, Inc. appeared at trial through its attorney of record, Edward T. Tylicki of Lindsay, Hart, Neil & Weigler, L.L.P.

    Mobile Workforce filed is First Amended Complaint on May 4, 2005 for breach of contract, account stated, moneys due and owing, unjust enrichment, and quantum meruit. Pacific Medical filed its answer and counterclaim on May 16, 2005. In its counterclaim the defendant alleged breach of contract.

## FINDINGS OF FACT

Based on the evidence presented and the testimony of the witnesses, the Court finds:

1. Mobile Workforce, Inc. is a Delaware corporation in good standing, with its primary place of business in Port Orchard, Kitsap County, Washington. Mobile Workforce provides software products and services which enable its customers to provide their mobile sales forces with real-time distribution chain management capabilities

2. Pacific Medical, Inc. is a California corporation in good standing, with its primary place of business in Livermore, California. It is in the business of selling medical supplies and equipment.

3. Mobile Workforce had an agreement with Arthrex, a medical device manufacturer, to build an electronic interface for use by Arthrex sales representatives, to serve as an inventory management/sales system. Mobile Workforce also offered a web component to its system which provided real time information regarding orders and inventory. The system included the use of a handheld computer and scanner with specially designed software appropriate for use by the various Arthrex distributors. The system allowed, among other things, electronic entry of orders and efficient tracking of inventory. The system was marketed under the name of workSmart!.

4. The web component of the workSmart! system uploaded large quantities of data which was accessible by Pacific Medical authorized employees and permitted the preparation of monthly inventory reports (including inventory location and expiration dates) and sales reports.

5. Pacific Medical is one of the largest U.S. Arthrex distributors.

6. Premier Medical was the first Arthrex customer to use the system developed by Mobile Workforce. It used the system for order entry and inventory management. By the time Pacific Medical purchased the system, Mobile Workforce had three to four other customers using its product.

7. In early 2003 the parties began negotiations regarding the purchase by Pacific Medical of the system offered by Mobile Workforce. On March 26, 2003 the parties entered into an End User License Agreement (EULA), which agreement governed the use by Pacific Medical of the workSmart! software application and content hosting service (web site). The EULA was not an agreement to purchase but rather a document that governed the parties' relationship should Pacific Medical purchase from Mobile Workforce.

8. When Pacific Medical signed the EULA it had not been provided with an SLA (Service Level Agreement) or "Terms and Conditions of Sale" (Exh. 147). The "Terms and Conditions of Sale" do not govern the relationship between the parties.

9. The EULA specified that Pacific Medical was responsible for paying the service fee associated with the use of the service (Paragraph 5) and that the monthly fee was due in advance. The EULA did not provide specific pricing or quantity information. It also contained a termination clause (Paragraph 7) which permitted either party to terminate the agreement upon 180 days notice. This 180 days is the "Settlement Period" and the parties agreed that Pacific Mobile would continue to pay for the service during the Settlement Period. The notice was required to be in writing (Paragraph 17).

10. Paragraph 13 of the EULA clarified that the service is furnished "as is" and with all faults and that Mobile Workforce made no warranties, express, implied, statutory, or in any communication. Mobile Workforce expressly disclaimed all warranties as set forth in Paragraph 13.

11. The software designed by Mobile Workforce was and is subject to upgrades and modifications. Mobile Workforce advises its customers of the modifications through Release Notes which are sent to every user who has provided them with an e-mail address. Pacific Medical was aware of the fact that the software would have changes made to it on a regular basis. Pacific Medical did not contract for a specially customized program but rather purchased an existing program that was subject to upgrades and modifications.

12. Pacific Medical was interested in a system that would track sales, inventory (which was stored in a number of different locations for a number of different sales representatives) and soon to be expired product. Prior to using workSmart!, Pacific Medical would keep track of such information manually and therefore there was room for human error with regard to data entry. Pacific Medical did not have an efficient method of keeping track of soon to be expired product or consignment product location.

13. Pacific Medical began a trial of the service provided by Mobile Workforce in the summer of 2003 to see if the service would be of benefit to Pacific Medical. By the end of August 2003 four sales representatives of Pacific Medical had been trained and were utilizing the workSmart! computer software and associated hardware, which had been provided by Mobile Workforce.

14. Exhibit 8 is an August 5, 2004 e-mail from Paul Wiese, Vice-President for Sales of Pacific

Medical, to David Weir in which Mr. Wiese identified twelve features he wanted available prior to his purchase of the workSmart! system. All but three of these features were available in workSmart! prior to the final training in March 2004.

15. At the time Pacific Medical purchased workSmart! it did not have the following features: (1) a pop-up on the hand-helds that would notify the sales representatives that they have product expiring within 9 months so they would know of the need to move the product; (2) a web-based Surgeon Profile that was specifically developed by Paul Wiese; and (3) a consignment form that could be used to track product by location and product number. A fourth feature relating to ATSI forms was withdrawn as an issue in the defendant's opening statement.

16. Pacific Medical purchased the workSmart! product from the defendant for the total sum of $186,246.72 (Exh. 2, December 16, 2003 Invoice #10043). On December 24, 2003 Mobile Workforce received a check from New Tech Leasing Company LLC in the sum of $111,748.03 on behalf of Mobile Workforce, which sum was 60% of the sales price. This left a balance due of $65,405.67. The President of Pacific Medical has an ownership interest in New Tech Leasing Company LLC.

17. The workSmart! product was delivered in February 2004 and training of Pacific Medical's sales representatives was complete by the end of March 2004. Some of the sales representatives for Pacific Medical used the handhelds and scanners regularly. Others were not comfortable using the equipment and continued to do their work manually. Pacific Medical did not require its sales representatives to use the workSmart! system.

18. When Pacific Medical purchased the workSmart! system there was no pop-up feature on the hand-held that would automatically notify sales representatives of expired inventory.[1] This information was, however, available on the web site which could be put in report form and then e-mailed to the sales representatives. The sales representatives did not have authorization to request such reports but Tess Kremsky of Pacific Medical knew how to request such reports from the web site and she was authorized to request such reports. These reports could then be e-mailed to the sales representatives and would be available to them on their handhelds.

19. The specific Surgeon Profile created by Paul Wiese was, by the time of the training, on the

---

[1] An expiration date is by month and year only.

hand-helds as a word document and therefore was available to the sales representatives only. It was not also placed on the web and therefore the information was not available to other sales representatives or to management.

20. When Pacific Medical purchased the workSmart! system it did not contain the specific consignment form Pacific Medical had requested. However, the system already had the functionality to track product by location and product number as well as expiration date. Dave Weir understood that this particular form requested by Pacific Medical was intended for integration with its general ledger. The parties had been discussing, during their relationship, the development of a back office product referred to as Evolveware. This form would have been part of that service. The parties never completed the back office project.

21. Mobile Workforce added an automatic inventory expiration pop-up feature available on the handhelds on December 22, 2004.

22. A web-based Surgeon Profile was made available by Mobile Workforce on January 24, 2005. This Surgeon Profile not only contained all of the information in the Surgeon Profile developed by Paul Wiese but it included other information as well.

23. Pacific Medical continued utilizing the system and the hosting service at least through January 2005.

24. Mobile Workforce charges a monthly fee for use of its web hosting service. The monthly fee for the service provided Pacific Medical is contained in Exhibit 5. This service fee is separate from the fees included in the invoice referenced in Paragraph 12 above. Pacific Medical has made no payment for this service. Mobile Workforce has billed Pacific Medical the sum of $19,650.03 for the use of and access to the workSmart! application service provider system. Pacific Medical has not paid this bill.

25. David Weir, on behalf of Mobile Workforce, was willing to accept payment of the remaining balance due at the rate of 15% on the day of training and 25% after receipt by Pacific Medical of the software. Training was complete by the end of March 2004. Software which contained both the automatic pop-up feature on the handhelds and the web-based surgeon profile was available by January 24, 2005, prior to the time the defendant stopped using workSmart!.

26. Although demand has been made, Pacific Medical has made no payments to Mobile Workforce

1  other than the initial $111,748.03.

2  27. In December 2003 an attorney for Pacific Medical prepared a draft Hardware (With Software)
3  License and Purchase Agreement (Agreement) and forwarded it by e-mail to David Weir, of Mobile
4  Workforce, for his review.  David Weir reviewed the document, initialed ever page he received, signed it
5  on December 16, 2003 and returned it to Pacific Medical.

6  28. No one from Pacific Medical ever signed the Agreement.  In fact, Paul Wiese never saw the
7  Agreement prior to the litigation and Jeff Leonard, Chief Financial Officer for Pacific Medical, did not read
8  the entire Agreement.

9  29. The Agreement referenced Exhibit A - Products; Prices; Exhibit B - Product Specifications;
10 Exhibit C - Project Managers; and Exhibit D - Manufacturing Information and Escrow.  In addition, the
11 Agreement made reference to an Exhibit F which was to be related to product support services.  However,
12 there is no Exhibit F nor is there a reference to Exhibit F in the Table of Exhibits.  When David Weir
13 received the draft Agreement, Exhibits A, B, D and F were not provided.  The Agreement did incorporate
14 the EULA.

15 30. The Agreement identified the plaintiff's "Products" by referencing Exhibit A.  No Exhibit A
16 was attached to the draft Agreement nor was one ever presented to David Weir.  Exhibit B was intended to
17 set forth the agreed upon product specifications which could be modified by written agreement.  There was
18 no Exhibit B attached to the draft Agreement and one was never presented to David Weir.

19 31. The Agreement does make reference to the purchase of approximately 26 units and it provides
20 that the product support for the initial 26 units is included in the pricing but not the monthly hosting fee of
21 approximately $50 per unit per month.  The Agreement does not define "unit" although the context of the
22 Agreement makes it clear that the reference is to the handheld units only.  Pacific Medical intends to retain
23 the 26 units.  Reference to a "unit" is not reference to the software program developed and provided by
24 Mobile Workforce.

25 32. Paragraph 12.4 of the Agreement references certain paragraphs of the Agreement that were
26 intended to survive any termination of the Agreement.  It references five sections (i.e. 2.3; 3.4; 3.6; and
27 12.5) which are not contained in the Agreement itself.

28 33. The Agreement as presented to David Weir was a draft agreement only and was not intended

Findings of Fact and Conclusions of Law
Page - 6

by Pacific Medical to be a final agreement. Significant terms and conditions of the Agreement were not included in the draft document. This draft was prepared by an attorney at the request of Jeff Leonard. No one from Pacific Medical gave a reason, based on personal knowledge, as to why the company failed or refused to sign the Agreement.

34. On April 8, 2004 Paul Wiese sent an e-mail to David Weir (Exh. 121) advising that he did not believe Mobile Workforce had met its obligations and that he was going to contact his attorney "to explore a way to exit from our respective relationship." He then offered to return the equipment in return for a full refund of the money paid on behalf of Pacific Medical.

35. On May 12, 2004 Paul Wiese sent another e-mail to David Weir setting forth two options to resolve their differences. The first would require Mobile Workforce to do the following: (1) provide an expired product flag on handhelds; (2) load his Surgeon Profile on the system (web); and (3) provide the consignment form. If Mr. Weir did not think he could do this, then they should begin the process of dissolving the relationship but Pacific Medical wished to keep the IPAQ units (the handheld units) and the memory cards that house the videos, therefore the return of funds paid should reflect that cost.

36. It was not until this May 12, 2004 e-mail that it became clear to David Weir of Mobile Workforce that the flag for the nine month expiring inventory that had been requested by Pacific Medical was to be on the handhelds. David Weir then introduced Shelly Arnold to Pacific Medical and requested that Pacific Medical meet with Ms. Arnold to work out a development plan to complete the items identified by the defendant.

37. Ms. Arnold met with Paul Weise and Tess Krimsky on June 2, 2004. At that meeting the parties agreed about the specifications for the consignment form, agreed to have a pop-up on the handheld for soon-to-be expired product, and agreed that Paul Weise's Surgeon Profile would be available on the web and the handheld.

38. On July 14, 2004 Shelly Arnold requested a follow-up meeting with Paul Wiese to review anticipated delivery dates of the handheld pop-up feature and the Surgeon Profile and she had additional questions regarding the consignment form. No subsequent meeting occurred and no agreement was entered as to the dates the three functions identified in the preceding paragraph would be available.

39. The consignment form was available in December 2005, after Pacific Medical stopped using

the system. The consignment form was for purposes of creating a paper trail only and was not intended to be incorporated into the data base. The ability to track consignments was already present in the system when it was purchased by Pacific Medical. Of the 230 to 250 sales representatives using the product, none have ever used this consignment form feature.

40. No evidence was presented to the court that the absence of a particular consignment form caused any financial hardship to Pacific Medical nor did it interfere with or cause the loss of any clients.

41. A Surgeon Profile was available in January 2005 but it was not Paul Weise's Surgeon Profile. There is no significant difference between the Surgeon Profile prepared by Paul Weise and the Surgeon Profile that Mobile Workforce made available to all of its users in January 2005.

42. No evidence was presented to the court that the fact that Paul Weise's Surgeon Profile was not available to management from the web caused any financial hardship to Pacific Medical nor did it interfere with or cause the loss of any clients.

43. No evidence was presented to the court to support a conclusion that the absence of a pop-up feature on the sales representatives handhelds caused any loss to Pacific Medical. Not all of the sales representatives were using the handheld devices and Pacific Medical had the ability to advise its sales representatives of expiring inventory had it chosen to do so.

44. The charge back by Arthrex for expired and lost inventory for the year 2004 cannot be attributed to the workSmart! system not having a pop-up on the handheld of each sales representative. Not all sales representatives were trained on the system until sometime in March 2004. Not all sales representatives used the handhelds and Pacific Medical did not require that its sales representatives use the handhelds.

45. All system upgrades made by Mobile Workforce were intended to be available to all of its users as outlined in the many Release Notes which were exhibits at the trial. It is clear that the parties understood the software was being changed and enhanced on a regular basis.

46. Pacific Medical was still using the system when Tess Krimsky left her position with Pacific Medical. She quit her job because she was compensated on every billing she manually entered into the system at ½ of 1%. She was told that if Pacific Medical continued with workSmart! that Pacific Medical could not continue to pay bonuses for the manual entry of orders. She was not happy with that and left her

Findings of Fact and Conclusions of Law
Page - 8

employment with the company.

47. Sometime near the end of 2004 or early 2005 Pacific Medical hired an individual to transfer its information off the web hosted by Mobile Workforce. Pacific Medical then stopped using the service provided by Mobile Workforce. The sales representatives are back to manually tracking their sales and inventory as they did before they used workSmart! Paul Weise testified he paid this person a "few thousand dollars" but was not specific as to the amount and no documents were presented to the court that gave specific information as to when that person was hired, what s/he was paid or how long it took to complete the transfer of information.

48. Every year Pacific Medical has had to pay money back to Arthrex for expired inventory. The cost of its expired and lost inventory for 2004 is not related to any functionality or lack of functionality of workSmart! Not all the sales representatives used the handhelds. Pacific Medical had the ability to generate reports for its sales representatives to remind them of expired inventory. In addition, training for workSmart was not completed until February/March of 2004.

49. After the June 2, 2005 meeting, Pacific Medical never notified Mobile Workforce, in writing, that it intended to discontinue use of workSmart!

**CONCLUSIONS OF LAW**

Based on the above findings, the Court makes the following conclusions of law:

1. To the extent that the foregoing findings of fact contain conclusions of law, they shall be deemed to be incorporated herein by reference; conversely, to the extent that any of these conclusions of law are properly findings of fact, they should be deemed as such.

2. Article 2 of the Uniform Commercial Code does govern the parties' agreement, as conceded by the plaintiff during closing argument.

3. The only valid written agreement between the parties is the EULA.

4. The Hardware (with Software) License and Purchase Agreement (Agreement) is not an enforceable contract as it was only signed by the plaintiff. The only reference in the Agreement to quantity is to "26 units" which were not contested at trial as the defendant intends to retain the units. There is,

1  therefore, no agreement enforceable as against the plaintiff and no contract.

2      5. The Agreement lacked essential terms and there was no meeting of the minds for purposes of
3  forming an enforceable contract.

4      6. Neither party is entitled to attorney fees.

5      7. Pacific Medical never revoked its acceptance of the workSmart! system provided it by Mobile
6  Workforce.

7      8. Mobile Workforce provided the workSmart! system as agreed between the parties, which
8  included periodic upgrades to the software which was made available to all of Mobile Workforce's clients.
9  Mobile Workforce therefore did not breach its agreement with Pacific Medical.

10     9.  Pacific Medical did not purchase a customized software program from Mobile Workforce.
11 Rather it purchased a program that was for use by all of Mobile Workforce customers and modifications or
12 upgrades were made to the software based on requests made by the various customers.

13     10. Pacific Medical is liable to Mobile Workforce for breach of contract in the amount of
14 $65,405.67 based on Invoice No. 10043 dated December 16, 2003 as shown on page two of Exhibit 2.

15     11. Pacific Medical owes pre-judgment interest on this liquidated amount at the rate of 12 percent,
16 in an amount to be determined.  Pursuant to the agreement of the parties, 15% of this balance was due
17 March 30, 2004 and the remaining 25% of this balance was due as of January 24, 2005.

18     12. Pacific Medical owes the monthly service fee from October 1, 2003 through January 31, 2005.
19 It owes pre-judgment interest on this liquidated amount at the rate of 12 percent, in an amount to be
20 determined.

21     13. Pacific Medical's counterclaims shall be dismissed with prejudice.

22     14. The plaintiff shall prepare an appropriate Judgment for entry by the court, with proper notice
23 to the defendant.

24     DATED this 14th day of December, 2006.

                                                                  Karen L. Strombom
                                                                  United States Magistrate Judge